IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                                            PLAINTIFF

V.                                                                CAUSE NO. 3:20-CR-131-CWR-FKB-1

IDREES AHMED ABDUR-RASHIED                                                         DEFENDANT

## ORDER

Before the Court is the defendant's motion to suppress. The motion is fully briefed and ready for adjudication.

I.      **Factual and Procedural History**

This is a motion about a small piece of plastic.

On July 14, 2020, close to midnight, Detective Josh Hartfield of the Richland, Mississippi Police Department stopped a Honda CR-V travelling along Highway 49. The Detective says he observed a bracket covering the expiration decal on the car's license plate. Mr. Abdur-Rashied was the sole occupant of the vehicle. Detective Hartfield stopped the car and requested Mr. Abdur-Rashied's license. Mr. Abdur-Rashied replied that he had left it at home.

As Detective Hartfield questioned Mr. Abdur-Rashied, he noticed a pill, which Mr. Abdul-Rashied identified as a vitamin. The Detective also noticed a clear piece of plastic sandwich bag ("the piece of plastic") on the driver-side floorboard, which he claimed contained residue.[1] Detective Hartfield believed that the residue was narcotics. Accordingly, he reached in through the open window of the car, picked up the piece of plastic from the floorboard, and asked Mr. Abdur-

---

[1] Note that this piece of plastic does not close at the top (i.e., it is not a "reclosable" or "zip-top" plastic bag); rather, it appears to have been torn from a regular size baggie and it would need to be tied to close it. Thus, while the parties refer to the piece of plastic at issue as a "baggie" in their filings and testimony, for the sake of accuracy, this Court will call it what it is: a piece of plastic.

Rashied about its contents. The Government states that Mr. Abdur-Rashied responded that the residue was cocaine.

In his motion to suppress, Mr. Abdur-Rashied does not address this alleged exchange. Instead, Mr. Abdur-Rashied contends that Detective Hartfield gave no *Miranda* warnings. Next, according to Mr. Abdur-Rashied, the Detective began "seizing the baggie and claiming to see a narcotic residue within it." Mr. Abdur-Rashied claims that Detective Hartfield then "proceeded to remove Abdur-Rashied from the car and conducted a search." Docket No. 28 at 1.

Both parties agree that immediately prior to conducting the search, Detective Hartfield "asked Mr. Abdur-Rashied if anything else was in the car, presumably referring to anything illegal." Docket No. 29 at 2. Mr. Abdur-Rashied responded that there was a gun under the floor mat. Detective Hartfield then conducted a search, during which he found and seized the weapon. The Government subsequently indicted Mr. Abdur-Rashied for being a felon in possession of a weapon. *See* 18 U.S.C. § 922(g)(1). The present motion followed.

This Court held a hearing on Mr. Abdur-Rashied's motion to suppress on September 24, 2021. Detective Hartfield testified to pulling over Mr. Abdur-Rashied due to a covered expiration decal on the license plate. He affirmed that he spotted the piece of plastic at issue using his flashlight. He stated that even if Mr. Abdur-Rashied's window had been up, he could still have seen the piece of plastic with his flashlight. Based on his training and experience, Detective Hartfield testified that he recognized the piece of plastic as a common method of transporting narcotics. Detective Hartfield also submitted that upon shining his flashlight on the piece of plastic, he spotted white, tinted residue inside it. Concerned about the destruction of evidence, Detective Hartfield stated, he reached in through the open window of Mr. Abdur-Rashied's car and picked

up the piece of plastic. This piece of plastic, Detective Hartfield claimed, provided probable cause to search Mr. Abdur-Rashied's vehicle.

The Government also aired dash camera footage at the hearing.[2] This footage showed that after he pulled over Mr. Abdur-Rashied, Detective Hartfield asked about the pill, which Mr. Abdur-Rashied identified as a vitamin. At that point, Detective Hartfield told Mr. Abdur-Rashied that "he had some bad news," and was going to have to search the car. Then, Detective Hartfield reached in through the open window towards Mr. Abdur-Rashied's foot and grabbed the piece of plastic, sarcastically announcing that "stuff just be falling out of the sky." Detective Hartfield next asked Mr. Abdur-Rashied whether the piece of plastic held "some X [ecstasy] pills or some meth . . . [or] cocaine." Mr. Abdur-Rashied initially demurred. When pressed by Detective Hartfield, Mr. Abdur-Rashied eventually stated that "it wasn't [cocaine]" and there was "no coke."

Detective Hartfield instructed Mr. Abdur-Rashied to exit his vehicle. He frisked Mr. Abdur-Rashied and told Mr. Abdur-Rashied to tell him if there was anything illegal in the car. Mr. Abdur-Rashied responded that there was a gun. Detective Hartfield then asked Mr. Abdur-Rashied whether he was a convicted felon. Mr. Abdur-Rashied responded in the affirmative. Detective Hartfield then searched the car.

At the suppression hearing, the Government conceded that Mr. Abdur-Rashied never consented to the search of his vehicle. The search yielded three intact plastic baggies, a scale, and a gun. After locating the items around 20 minutes into the stop, Detective Hartfield called in Mr. Abdur-Rashied's name and social security number and learned of an outstanding federal warrant for his arrest.

---

[2] Due to the positioning of Mr. Abdur-Rashied's body in front of the dash camera from around six minutes into the video onward, it is difficult—and indeed, at many points, impossible—to see Detective Hartfield search the car after Mr. Abdur-Rashied's exit from the vehicle.

Around 26 minutes into the stop, Detective Hartfield notified Mr. Abdur-Rashied that, because Mr. Abdur-Rashied was a convicted felon, Detective Hartfield would take his gun. Detective Hartfield then read Mr. Abdur-Rashied his *Miranda* rights.

Detective Hartfield emphasized that he was not going to arrest Mr. Abdur-Rashied "right now." Notwithstanding this representation, Detective Hartfield proceeded to call Madison County and Rankin County jails to ask them to detain Mr. Abdur-Rashied. They apparently refused.[3]

Evidently frustrated, at approximately 44 minutes into the stop, while on the phone with a colleague, Detective Hartfield bemoaned the refusal of a jail to detain Mr. Abdur-Rashied. He then declared, "I don't care. I'll indict him later. I'm gonna indict him on the gun." *Id.*

The stop lasted approximately 50 minutes in total. *Id.* At the suppression hearing, both the Government and Mr. Abdur-Rashied agreed that the search failed to yield any illegal narcotics. No testing of the residue, if any even existed, was performed.

The Government introduced into evidence the video of the stop taken from Detective Hartfield's dash cam. Docket No. 32. Mr. Abdur-Rashied's counsel introduced a large plastic evidence bag containing the piece of "baggie," three additional intact plastic baggies and a small digital scale. Docket No. 33. The Detective also found an unopened bottle of vitamins in the car. When this Court inspected the large plastic bag of items seized from Mr. Abdur-Rashied's car, it found no trace of the alleged residue in any of the small baggies, nor floating in the large evidence bag itself. Of particular note, the evidence bag had been labeled by the Richland Police Department. On that label it identifies all that had been placed in the bag. Remarkably, the person who labeled the evidence bag noted that it contained a "clear bag." The label does not describe the

---

[3] The jails likely refused to detain Mr. Abdur-Rashied, at least in part, due to the ongoing COVID-19 pandemic. This, despite Detective Hartfield's assurances to the jails, audible on the dash camera footage, that Mr. Abdur-Rashied did not have a fever or any other symptoms of COVID-19, and had not traveled outside the country prior to the traffic stop.

4

piece of plastic as having contained anything like "residue" or "what appears to be residue" or "what appears to be drugs" or "substance" or "powder." It describes nothing. It simply says "clear bag."

**II.      Legal Standard**

"The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment." *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2013) (citations omitted). Yet, "[a]n exception to the Fourth Amendment's warrant requirement exists when a police officer has probable cause to search an automobile for contraband." *United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013). And under the plain view doctrine, "a truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987).

> Under the plain view doctrine, moreover,
>
> it is also well settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.

*Payton v. New York*, 445 U.S. 573, 586-87 (1980). The Supreme Court reasoned "that requiring police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property or incriminating evidence generally would be a 'needless inconvenience' . . . that might involve danger to the police and public." *Texas v. Brown*, 460 U.S. 730, 739 (1983) (citation omitted). By extension, "if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." *Id.*

5

Seizure of an object under the plain view doctrine requires probable cause. *Hicks*, 480 U.S. at 326. Additionally, "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating emerges." *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971). An exception to this rule arises, however, "where . . . the seizure is minimally intrusive and operational necessities render it the only practicable means of detecting certain types of crimes." *Hicks*, 480 U.S. at 327. Conversely, "[o]nce the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006).

"Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonsense, nontechnical conceptions that deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). The key inquiry is whether "the events which occurred leading up to the stop or search, . . . viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Id.* at 696-97. The first component of this analysis is strictly factual; the second involves application of the law to those facts. *Id.* "[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists." *Id.* at 700.

"The exclusionary rule provides the typical remedy for Fourth Amendment violations: suppression of the evidence at trial." *United States v. Mendez*, 885 F.3d 899, 909 (5th Cir. 2018). This rule "reaches not only the evidence uncovered as a direct result of the violation, but also evidence indirectly derived from it—so-called 'fruit of the poisonous tree.'" *Id.* (citing *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (quotation omitted)).

6

**III.    Discussion**

This case boils down to one question: did Detective Hartfield have probable cause to search the car? A vehicle search requires either consent or probable cause. *See United States v. Ortiz*, 422 U.S. 891, 896-97 (1975). At the hearing, the Government conceded that Detective Hartfield did not seek, nor did Mr. Abdur-Rashied give, consent to search the car. The search, then, required probable cause. It follows that if Detective Hartfield lacked probable cause to search the vehicle, then the Court must exclude the gun as fruit of the poisonous tree. Docket No. 28 at 4.

The Government contends that the plain view exception supports Detective Hartfield's seizure of the piece of plastic. Under controlling Fifth Circuit precedent, a police officer may seize an item without a warrant "if: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was 'immediately apparent;' and (4) the police had a lawful right of access to the item." *United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006) (citing *United States v. Buchanan*, 70 F.3d 818, 825-26 (5th Cir. 1995)). "The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty.'" *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir. 2005) (citations omitted).

The Government submits that Detective Hartfield's seizure of the piece of plastic met these requirements. Based on Detective Hartfield's training and experience, the Government argues, the incriminating nature of the piece of plastic was "immediately apparent" to him. *Id.* The Government further claims that Detective Hartfield's questioning of Mr. Abdur-Rashied about the piece of plastic's contents "is irrelevant, because Detective Hartfield's observations of the baggie and the residue contained in it while it was on the floorboard created probable cause that narcotics were present in the car and justified the search of the car that led to the gun." Docket No. 29 at 5.

7

At the hearing, the Government qualified this statement, submitting that the piece of plastic alone, even without residue, gave rise to probable cause of criminal activity. According to the Government, all that probable cause required was this single piece of plastic.

Plastic is everywhere.[4] From food to toys, disposable utensils to medical devices, earplugs to vitamins, we use plastic to store and transport all manner of objects. Most of the time these usages are lawful. By extension, plastic wrappers are a ubiquitous feature of most cars' interiors. Nearly every car contains some stray piece of plastic.[5] Indeed, the piece of plastic in this case came from the same kind of plastic bag that many parents use to send sandwiches to school in their children's lunchboxes. Such bags are generally convenient, not criminal. Pieces of plastic are more prevalent, probably less convenient, but certainly even less criminal.

The Government argues, accurately, that "[p]robable cause exists where police see nothing more than the narcotics itself." Docket No. 29 at 5 (citing *United States v. Kalie*, 538 F.2d 1201, 1202-03 (5th Cir. 1976) and *United States v. Dixon*, 525 F.2d 1201 (5th Cir. 1976)). But that does not justify the seizure in this case. The piece of platic presented in court contained no drugs or drug residue. And the Government has no testing stating otherwise.

The Government's supporting cases are also distinguishable from today's situation. Mr. Abdur-Rashied's plastic bag lacked the marijuana debris, *Kalie*, 538 F.2d at 1202-03, or marijuana seeds, *Dixon*, 525 F.2d at 1201, that defendants in other cases possessed. Further, a piece of plastic does not bear "the distinctive character" of other items that the Supreme Court has recognized as

---

[4] *See* Laura Parker, *Here's How Much Plastic Trash is Littering the Earth*, NATIONAL GEOGRAPHIC (Dec. 20, 2018), https://www.nationalgeographic.com/science/article/plastic-produced-recycling-waste-ocean-trash-debris-environment (reporting on the 8.3 billion metric tons of plastic on Earth).

[5] *See Majority of Americans agree that having a filthy car is a total turn-off*, NEW YORK POST (April 27, 2020), https://nypost.com/2020/04/27/majority-of-americans-agree-that-having-a-filthy-car-is-a-total-turn-off/ (reporting on a study in which nearly 49% of respondents indicated that they had a messy car, filled with trash, including "old food wrappers," "plastic bottles," and other pieces of plastic).

triggering probable cause when assessed by "the trained eye of the officer." *Texas v. Brown*, 460 U.S. 730, 743 (1983).

A review of the dash camera footage further weakens the Government's argument. Over the course of his exchange with Mr. Abdur-Rashied, Detective Hartfield at first expressed conviction that the alleged residue on the piece of plastic was ecstasy. Then he said it was cocaine. This, despite Mr. Abdur-Rashied's representation that the loose pill the Detective spotted near the piece of plastic was a vitamin. Detective Hartfield did not test the loose vitamin found in the car, nor the alleged residue, as the City of Richland's narcotics unit keeps its field kits in the office, not in the field.

To quote Detective Hartfield, probable cause, like a baggie, does not just "fall out of the sky." An officer cannot conjure evidence of narcotics transport or use simply by listing illegal substances. Repeatedly asking a driver whether his vehicle contains cocaine does not transform an ordinary piece of plastic into a conveyor of drugs. Sometimes, probable cause is simply absent. That was the case here.

The protections of the Fourth Amendment are not absolute. Yet they surely protect against the comedy of errors presented in this record. Officers are not permitted to manufacture probable cause.  Since Detective Hartfield lacked probable cause to search the car, this Court will apply the exclusionary rule, which "prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.'" *United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012) (citing *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001) (internal quotation omitted)). Accordingly, this Court will exclude the fruit of this unconstitutional search, including the gun.

**IV.     Conclusion**

Mr. Abdur-Rashied's motion to suppress is granted.

**SO ORDERED**, this the 15th day of October, 2021.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE