# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**UNITED STATES OF AMERICA**                                                 **PLAINTIFF**

**V.**                                                                                **CAUSE NO. 3:20-CR-131-CWR-FKB**

**IDREES AHMED ABDUR-RASHIED**                                    **DEFENDANT**

## ORDER

Before the Court are the Government's motion for reconsideration [Docket No. 37], motion to supplement the record [Docket No. 40], and motion for hearing [Docket No. 43]. The motions are fully briefed and ready for adjudication.

## I. Factual and Procedural History

On July 14, 2020, Detective Josh Hartfield stopped Idrees Abdur-Rashied's vehicle in Richland, Mississippi because he observed a bracket covering the expiration decal on the car's license plate.

As Detective Hartfield questioned Mr. Abdur-Rashied, he noticed a pill, which Mr. Abdur-Rashied identified as a vitamin, and a clear piece of plastic sandwich bag ("the piece of plastic") on the driver-side floorboard.[1] Detective Hartfield believed that the residue was narcotics. Accordingly, he reached in through the open window of the car, picked up the piece of plastic from the floorboard, and asked Mr. Abdur-Rashied about its contents. The Government states that Mr. Abdur-Rashied responded that the residue was cocaine. Dash camera footage from the stop verifies that Mr. Abdur-Rashied at one point may have acknowledged that something may have been "coke" after having responded in the negative to Hartfield's question as to whether there were any

---

[1] Note that this piece of plastic does not close at the top (i.e., it is not a "reclosable" or "zip-top" plastic bag); rather, it appears to have been torn from a regular size baggie and it would need to be tied to close it. Thus, while the parties refer to the piece of plastic at issue as a "baggie" in their filings and testimony, for the sake of accuracy, this Court will call it what it is: a piece of plastic.

illegal drugs in the car—there was no weed, cocaine, heroin, or meth, nor any ecstasy pills. Abdur-Rashied's motion contends that the Detective began "seizing the baggie and claiming to see a narcotic residue within it." Mr. Abdur-Rashied claims that Detective Hartfield then "proceeded to remove Abdur-Rashied from the car and conducted a search." Docket No. 28 at 1.

Detective Hartfield also "asked Mr. Abdur-Rashied if anything else was in the car, presumably referring to anything illegal." Docket No. 29 at 2. Mr. Abdur-Rashied responded that there was a gun under the floor mat. Detective Hartfield then conducted a search, during which he found and seized the weapon. The Government subsequently indicted Mr. Abdur-Rashied for being a felon in possession of a weapon. *See* 18 U.S.C. § 922(g)(1). Mr. Abdur-Rashied filed a motion to suppress evidence on July 20, 2021.

On October 15, 2021, following full briefing by both parties, and a September 24, 2021 hearing on the motion, the Court issued an Order granting the motion to suppress. Docket No. 34. Based on an evaluation of the physical evidence bag, the Court ascertained several discrepancies in Detective Hartfield's account. For one, the putative plastic baggie giving rise to the search was not a baggie at all, but instead was a torn piece of plastic. For another, upon firsthand inspection of the evidence bag and its contents, the Court found no trace of any sort of residue. The Government also lacked any test results showing any residue. Considered alongside Detective Hartfield's testimony at the suppression hearing, these observations led the Court to conclude that probable cause to search Mr. Abdur-Rashied's car did not exist at the time of the stop. Put another way, the Court did not find Detective Hartfield's account credible. Thus, the Court granted the motion to suppress the fruits of the illegal search, including the gun.

The Government filed the present motion for reconsideration on October 22, 2021. Defendant filed his response in opposition on November 2, 2021, and the Government replied on November 4, 2021.

On November 19, 2021, as discussed more fully below, the Government filed a motion to supplement the record. Defendant filed his response in opposition on November 30, 2021, and the Government filed a reply later that same day.

## II.  Legal Standard

### A.  Reconsideration

While motions for reconsideration "are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991). Such a motion is timely if filed within the 10-day deadline for appeal authorized by Rule 4(b) of the Federal Rules of Appellate Procedure. *Id.*

### B.  Supplementation of the Record

When compiling a record for appeal, the Federal Rules of Appellate Procedure provide that "[i]f any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." Fed. R. App. P. 10(e)(1). The Rule further provides, in relevant part, that "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded . . . by the district court before or after the record has been forwarded." Fed. R. App. P. 10(e)(2).

### III. Discussion

#### A. Motion for Reconsideration

The Government's argument for reconsideration rests on its contention that Detective Hartfield acted reasonably under all the circumstances, thereby justifying his search and the seizure of Mr. Abdur-Rashied's gun. Specifically, the Government takes issue with the Court's discussion of Detective Hartfield's exchange with Mr. Abdur-Rashied regarding the alleged residue in the bag. The Government emphasizes that upon questioning, the Defendant admitted to the Detective that "'[i]t might have been a little cocaine'" on the piece of plastic. Docket No. 37 at 6. This, the Government contends, provided the Detective with probable cause to search the vehicle.

It is true that the Detective was not required to credit the Defendant's denial that the piece of plastic bore no cocaine trace. But neither is this Court bound to credit the Detective's testimony. A review of the video footage and audio of the stop, and the video transcript prepared and submitted by the Government, shows that while the Defendant may have initially allowed that there "might have been a little cocaine" on the piece of plastic, he quickly recanted. Without equivocation and within seconds of his initial, qualified concession, Defendant stated—twice—that "[i]t wasn't cocaine." Docket No. 37-1 at 4-5.

In the Court's view, this exchange does not amount to, as the Government submits, the Defendant's "candid admission about the substance on the piece of plastic bag." Docket No. 39 at 1. Mr. Abdur-Rashied's statements about the alleged residue on the bag are contradictory at best. Viewed in the context of a traffic stop, during which drivers often feel immense anxiety, Defendant's statement reads more as a nervous remark which he quickly revoked. Accordingly, the Court again declines to credit the Government's interpretation of this exchange.

Next, the Government challenges the Court's observation that no residue was on the piece of plastic nor in the evidence bag at the time of the suppression hearing. In a footnote in its reply brief, the Government described the presence of residue in the evidence bag and along the piece of plastic as "'uncontradicted.'" Docket No. 39 at 2, n.2 (quoting Tr. 62). Further, it stresses that "[h]ow the evidence was later kept does not detract from probable cause at the time of the traffic stop. Nor was a field test required." *Id.* at n.1 (citing *United States v. Delacruz*, 452 F. App'x 461, 462 (5th Cir. 2011)). "[I]t is what the detective thought he saw at the time of the stop—and what the defendant said about it"—the Government emphasizes "—that should be determinative." *Id.* at n.2.

The Government is correct that a field test was not required. *See Delacruz*, 452 F. App'x. at 462. But "[e]ven in the absence of a field test, the totality of the circumstances" must demonstrate that the law enforcement official "had probable cause" to search. *Id.* A review of the record affirms the Court's earlier finding that no such probable cause existed. *See* Docket No. 34 at 8-9. Unlike in *Delacruz*, no "'readily recognizable'" contraband here existed. Under the totality of the circumstances standard, the Court found that the Detective lacked probable cause to search the vehicle.

Lastly, the Government challenges the Court's interpretation of the Defendant's statements regarding the gun, contending that the search of the vehicle occurred "only after the defendant admitted he had a gun as a convicted felon." Docket No. 37 at 8. But this characterization is incomplete. As demonstrated by the dash camera footage, and the transcript of the footage supplied by the Government, the Defendant admitted to the gun in his car only *after* the Detective said, "[a]lright man, here's the deal; if you got something else in the car, tell me about it. Because I'm fixing to search the car and I'm going to find it. And look, if you be real with me, I can help you."

5

Docket No. 37-1 at 6. Thus, the record shows that the Detective was already "fixing to search the car" prior to the Defendant's statement.

Contrary to the Government's portrayal, then, the video and transcript establish that Defendant's statement that there was a gun in the car did not trigger the search. Rather, the reverse occurred: Defendant's admission followed from the Detective's pronouncement of an imminent search. The search still required probable cause. A review of the record reveals that no such probable cause existed at the time the Detective announced his intention to search the vehicle. *See* Docket No. 34 at 8-9.

"The judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts." *United States v. Jones*, 187 F. Supp. 3d 714, 723 (M.D. La. 2016). Indeed, "'[o]ne of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses.'" *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (quoting *Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980)). Whether a witness is a layperson or a law enforcement official, the Court is not required to blindly accept that witness's account. On the contrary, the Court's duty to uncover the truth—"a fundamental goal of our legal system"—requires the appropriate weighing of evidence, including, but not limited to, witness credibility. *United States v. Havens*, 446 U.S. 620, 626 (1980) (citation omitted).

Here, the totality of the circumstances, including a thorough review of the dash camera footage and transcript prepared by the Government, and an assessment of the (lack of) residue in the evidence bag, weighed against crediting the Detective's testimony that the seizure of the piece of plastic amounted to probable cause. Reconsideration of the evidence does not yield a different finding. Hence, the Court declines to disturb its earlier Order.

### B.     Motion to Supplement the Record

The Government next moves the Court to allow it to view and unseal the evidence bag, so that it can "separately photograph the contents." Docket No. 40 at 1. After photographing each piece of evidence within the bag, the Government submits that it will reseal it and add the photographs to the record. *Id.* at 2.

Mr. Abdur-Rashied opposes this motion. Defense counsel notes that the Government had the opportunity to enter photographs of the seized items into evidence at the time of the hearing. It failed to do so. Docket No. 41 at 1. Next, defense counsel stresses that the Court asked Detective Hartfield "multiple times about whether the bags entered into evidence were as they were the night that he found him." *Id.* Each time, Detective Hartfield answered in the affirmative. *Id.* at 1-2. Thus, the physical evidence bag and its contents are "the best evidence in this case." *Id.* at 2.

The Government defends its failure to offer the photos of the individual pieces of evidence at the hearing by pointing to Detective Hartfield and the prosecutor's professed "ability to see the residue inside [the evidence bag]." Docket No. 42 at 1. "It was only ***after*** the hearing that the Court issued its written opinion expressing its view that the residue could not be seen.," the Government emphasizes. *Id.* (emphasis in the original). The Government insists that supplementation of the record will ease the burdens on the Fifth Circuit. *Id.* at 2. Further, it contends that such a course of action is permitted under Rule 10(e) of the Federal Rules of Appellate Procedure. *Id.* Thus, argues the Government, this Court should allow it to supplement the record with photographs.

A review of the docket shows that photographs of the sealed evidence bag are already in the record. *See* Docket No. 33. The Courtroom Deputy took them as a matter of course. In light of the existing photos, practical and legal reasons suggest that the Government's arguments to take additional photographs should be denied.

7

As a practical matter, the Clerk's Office does not permit parties to unseal bags of evidence. The Clerk is the custodian of the evidence as it was received.[2] The bags are kept in the vault. While parties may physically come to view the evidence bags—under supervision of a Deputy Clerk—they may not open them. If the Fifth Circuit wishes to review the bags, the Clerk's Office will send them directly to New Orleans.

Rule 10 cuts in the same direction. "The purpose of Rule 10(e) is to ensure that the record on appeal accurately reflects what happened in the district court." *Ghali v. United States*, 455 Fed App'x 472, 476 (5th Cir. 2011) (citation omitted). This Court's prior Order acknowledged the testimony put on by the Government that the piece of plastic contained residue. *See* Docket No. 34 at 2. The Court's observation that neither the piece of plastic nor the larger evidence bag contained any trace of residue, in contravention of Detective Hartfield's testimony, does not amount to an omission or misstatement. It is simply a recitation of the Court's examination of the evidence presented. That the examination contradicted the Government's account does not amount to "error" or "accident" within the meaning of Rule 10(e). *See United States v. Page*, 661 F.2d 1080, 1081 (5th Cir. 1981) (admonishing that a supplementation "designed to supply what might have been done but was not, are beyond the reach of the rule"). The evidence bag and its contents are the best evidence of what Detective Hartfield saw on the night that he stopped and searched Mr. Abdur-Rashied and his vehicle.[3]

---

[2] The Clerk's Office does not ordinarily maintain custody of drugs entered into evidence. Instead, narcotics introduced into evidence return to the Government's custody upon conclusion of the courtroom proceeding. In contrast, the Government in the present case allowed the Court to retain possession of the evidence bag notwithstanding the alleged narcotics residue it contained.

[3] The Court here uses the phrase "best evidence," in its colloquial sense, meaning "better than all others in quality or value" or "most appropriate, useful, or helpful." *See Best*, Merriam-Webster (Dec. 1, 2021), https://www.merriam-webster.com/dictionary/best. It is not meant to invoke Rule 1002 of the Federal Rules of Evidence, "the best evidence rule," which the Fifth Circuit has recognized serves "to prevent inaccuracy and fraud when attempting to prove the contents of a writing," not the character of a physical object, like a piece of plastic or purported residue. *United States v. Yamin*, 868 F.2d 130, 134 (5th Cir. 1989).

Defendant's argument regarding the Government's prior opportunity to enter photographs of the items into evidence is also well-taken. *See Ghali*, 455 Fed App'x at 476 ("Rule 10(e) is not designed to 'supply what might have been done [in the district court] but was not.'") (quoting *Page*, 661 F.2d at 1082). The Government exercised its discretion in not testing the bag's contents and in not moving into evidence its own photographs of the seized items. It must now live with those decisions. The Court will deny the Government's motion to supplement the record. Accordingly, the Government's motion for hearing is dismissed as moot.

### IV.     Conclusion

The motions for reconsideration and to supplement the record are denied. The motion for hearing is dismissed as moot.

**SO ORDERED**, this the 11th day of January, 2022.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE
